Good morning, Your Honors. Jesse Moorman for the Petitioner. This is a case of ineffective assistance. Our office did receive the notice and did not properly contact the Petitioner or the respondent in immigration and deportation proceedings. I believe that the low case squarely controls this. In fact, I believe our facts are stronger in the low case that Petitioners did have notice of the date, but were advised that it was a different date. And also, in this case, the hearing that was missed was only a master calendar when the former judge retired and the case was transferred to a new judge. The only purpose of that was to find a date for the merits hearing for which everybody was fully prepared and had been waiting for a long time. Mr. Moorman, could you address the government's argument that you failed to exhaust administrative remedies by not making the ineffective assistance argument to the Board? As I understand it, that's jurisdictional for us, so we have to get over that hurdle before we can consider the merits of your argument here. Well, we've complied with the Lozada elements in the same way that Lowe had done. We have declarations from the attorney and from the Respondent and Petitioner for Ms. Rodriguez as to her lack of notice and to the responsibility of the attorney and our attempt to make the case that her case should be reopened. And now it's squarely controlled by Lowe. And before that, maybe you can point me. I'm looking at Excerpt of Record 17, which is the Notice of Appeal filed to the Board, and I don't see anywhere in there that ineffective assistance of counsel is listed as an issue to be presented to the Board. Perhaps you could help me understand where in the recitation of the issues on appeal you present this issue properly to the Board. Well, I can answer my question if you can help me. Your Honor, we didn't include the BIA brief. I'm not sure whether that was addressed in the BIA brief. It's not included. Well, I have a copy of the BIA brief, which is Excerpts of Records 4 through 10, and I have the same problem. I didn't see it in there either. So if you didn't raise it in the Notice of Appeal and you didn't raise it in the brief that you filed at the Board of Immigration Appeals, how can you satisfy our jurisdictional requirement that you exhausted your administrative remedies sufficient for us to decide the issue here? Well, then it would rest on the totality of the circumstances, as in Albir Singh, cited by the government's brief, that's 213 F. 3rd, 1050, in which the Respondent had sprained his ankle, had no resources to pay a doctor, and had his friend take care of him and submit an affidavit of why he didn't appear. It wasn't an issue of no notice, but simply totality of the circumstances. And the court granted that petition based on the legal standards that would probably be applied. Well, you know, first of all, I want to say this to you, Mr. Borman, we've seen you here before, haven't we? You look very familiar to me. Yes, sir. You know, I want to commend you for coming forth and just telling us that your office screwed up. Don't get too many lawyers to do that. They'll blame somebody else. They'll blame secretaries. They've got a whole laundry list of excuses. So I admire you for that, and I think it's commendable. But when you appeared before the IJ, you say that judge was getting ready to leave the bench, huh? Retire. Yes. And so it was really a master calendar where they were just passing these cases out. To other judges, is that what happened? Yes. And at that time, as I understand it, you told the immigration judge that your office had made a mistake, and you asked that the client hadn't been notified, and that you Yes. And then when you made your motion to reopen, you made the same argument that, you know, in effect, that your law office got the notice but failed to notify the client. So what I'm getting at is that the BIA or the immigration people certainly had noticed that your firm had ineffectively represented this person. Yes, that was quite clear. I believe the same pattern was obtained in the Lowe case, although I don't have all the record of what happened. The report of it is that essentially the same thing happened there. It doesn't, as far as I remember, talk about the affidavits being made in terms of Lozada. Ms. Wood, who appeared for Ms. Rodriguez, tells me that the judge said, well, bring me a medical certificate, a doctor's certificate, which was not the truth, but it would have served the purpose, the judge already being aware of the fact that we had failed to give notice. And in Balbur-Singh, the man couldn't afford a doctor and didn't bring a medical certificate. But the Lozada, strict application of Lozada is really sometimes leads to subterfuges. And we came back with the best we could do on that. We have this case here, Lozada. You've pointed to that case, L-A-D-H-A versus I-N-S, decided in 2000. Tim Wardlaw's opinion, I believe. And there's a footnote there. Oh, yeah. There's a good panel there. There was Wardlaw, Prager-Son and somebody else. Chatered. Chatered. All right. Now, in footnote 13, which is my lucky number, you have this sentence. I have to study the case further, but it's a long footnote. But Judge Wardlaw says, and the panel agreed, that the BIA, you know, after reciting what was before the immigration judge, thus had sufficient reason to be aware of an opportunity to review this claim. And I don't know. Maybe you brought this up how many times before the BIA? You brought it up twice before the immigration judge. And I don't know if you were aware of this ineffective issue, you know, in a kind of a mild way. Well, maybe they had, you know, been aware of it. It was implicit in the situation the same way as the analysis in Lowe said that the first two elements of LADA were clearly met, even though there's nothing in the statement in the case that they were done in the explicit context of LAZADA, or that they met those exact outlines of chance to respond to a complaint from the client. He responded by making a motion to reopen on the next day. So, yes, I think everybody was fully aware of the legal framework for this. Okay. Thanks a lot. Thank you. May it please the Court. My name is Judy Hines. I represent the Attorney General, John Ashcroft, in this case. The issue before this panel is did the Board abuse its discretion when it affirmed the immigration judge's decision denying Petitioner's motion to reopen its in absentia decision. Under 242bc3, rescission can only be of an in absentia order. It can only be granted if, one, the alien was in custody, which is not an issue here. Proper notice was not received, which is not an issue here, since we know that certified notice was sent to the attorney of record. Or exceptional circumstances apply. And according to this statute, that includes serious illness of the Petitioner or serious illness or death of a close relative. But doesn't that also include ineffective assistance of counsel? This Court has recognized in Moniaras-Munoz that ineffective assistance of counsel can be an exceptional circumstance. That case almost was a custody case because he, his attorney had, his attorney's wife had advised him to leave the country and come back in. He wasn't allowed to come back in. So as a matter of fact, he wasn't able to attend this hearing. The principle is there. The principle is there. As we argued in our brief, this issue was not raised below, was not raised to the immigration judge. The notice to have appeared states that the attorney did not know why her client was not at the hearing when she was there speaking to the immigration judge. She did not have good reason to give to the immigration judge why her client wasn't there because she didn't know. It's also clear from the notice of appeal at page 17 in the record that the attorneys weren't even aware or weren't even sure they had her correct address, and they haven't told us whether they did or not. That's not made clear from the record. It's also not made clear from the record whether anybody actually did attempt to notify her. The motion says perhaps somebody in the office failed to notify her, but it's not actually made clear. That's one of the reasons why there isn't even a — this isn't even close to Lozada. There isn't even an attempt that's substantially blunt with Lozada requirements. Well, at the time of the initial appearance on this, you're saying that a lawyer from the — from this office didn't tell the immigration judge that the office made a mistake? They didn't mail out that notice? Nobody said anything like that? That's right. There's a stay request in the record at AR 255. And in that stay request, the same firm says that they did not know at that time why the client did not appear. And you'll notice in the motion before the judge, the issue of a waiver for appearance wasn't argued. That was argued only to the board. And it was — there was no good reason. The issue of a waiver of her appearance, which was within the discretion of the judge if good reason was shown. She didn't show good reason. She couldn't show good reason because she had no idea why her client wasn't there. It was only afterwards that she began to investigate. And we don't even know what they found out. It just raises a possibility, okay, perhaps somebody forgot to notify her. If you're going to have substantial compliance with the ZADA, we would need to know what happened. We would need to know whether they looked at the records, if they have a copy of the letter sent to her, if the letter was ever returned. We — all we have from the alien is that she did not receive actual notice. We know from Farhood that actual notice is not required, that she doesn't say that she was living at the same address. She doesn't say she kept in contact with her own attorneys. We don't know this. We also don't know if she has waived her right to complain to the bar. That would be something that was done in the Lowe case. They explained the alien realized that it was a mistake and had chosen not to complain. And in that case also, the immigration judge made the mistake of saying there were several mistakes made in that case. People don't complain to the bar. I mean, I talk to people all the time. They've got lawyers that they're mad at, especially in divorce cases, take their money, they don't do anything for them. That happens in these cases, too. I've never heard one say, well, I'll go complain to the bar. Most of them are totally unaware that there's a bar they can complain to. Well, obviously, the attorney should take the client aside and explain potential conflict and what they can do about this ineffective assistance of counsel claim. In Lowe, the alien specifically stated that they had chosen not to complain because they realized that it was an error made by the secretary and that it was inadvertent. So that's why in that case substantial compliance was found. In this case, first of all, it wasn't raised below, and I don't think that we should be – you should be required to infer an argument, a legal argument based on the facts. Well, if a lawyer goes into a court and admits that she's guilty of malpractice, she might talk herself out of her insurance coverage. So sometimes they don't admit that there's malpractice. Tragically, we see a lot of immigration cases that are replete with malpractice by lawyers. But this particular firm has a pretty good reputation of doing things pretty much according to Hoyle. So then they make a mistake in this case. They come in the next day and say, we goofed. They don't want to admit that it was their fault, but they more or less do. And if this is the anomalous situation where you have a pretty good lawyer guilty of malpractice, that's an extraordinary or an exceptional circumstance in this case. In a lot of cases, it's not an exceptional circumstance. It's almost par for the course that a lot of these bottom-feeder lawyers that just come in the country by the month, that they neglect their business. But this firm ordinarily doesn't. Excuse me, Your Honor. I don't believe you can argue that the client is better off if they have a poor lawyer. No, I'm not arguing that. I just think it's tragic that in a case that's so obviously an inadequate representation that it looks awfully arbitrary for the I.J. to just say get out of here. You missed the boat and you're gone. Your Honor, I think the I.J. wasn't given that opportunity. What was argued in that motion was lack of notice and hardship. That was all that was argued in that motion. And I don't think the judge has to bring this up himself. It wasn't argued to the board either. So in this case, I think that potentially another lawyer should have brought this case before the State. That might have been a good idea. But in any case, the this the there was no administrative exhaustion below this issue. Also, the cat issue was not brought up below the Convention against Torture issue. There was no administrative exhaustion. Also, they're arguing that the statute is superseded by international law, which is contrary to the case law in this in this circuit. So, you know, the court at the Hague. Did you read the paper today? Just, you know, just rule that the United States violates international law. These cases involving Mexicans who haven't been. We didn't call a consul general. Yes. You know, and I did a case where I reversed for that lack. But then I got dumped on that. And so, you know, when you get back to Washington, tell the Supreme Court, I've been affirmed by the, you know, the world court. OK. I have that privilege. I have that privilege of speaking. I'm so happy to read that. You're reading that to me. Well, this is a matter of life and death. These people are on death row. So are there more questions? The BIA properly affirmed the immigration judge's denial of the motion to reopen and rescind her in absentia order because she failed to demonstrate lack of notice or exceptional circumstances. And I do want to dispute that the IJ had notice of this, of the reason why the alien was before him. Moreover, she failed to exhaust the administrative remedies in regard to assistance of counsel or the Convention Against Torture. Thank you, Your Honor. Thank you. Thank you. I believe the counsel has misstated the record as to our saying we didn't know why she didn't appear. That what — there's an application for a stay of deportation in which it's close, maybe close to saying that. But the papers that went — and a copy was filed with the court asking for a stay. But the notice of the motion for — to reopen clearly says that we neglected to notify the client. And her affidavit says that we didn't notify her. And so I don't believe the court granted our request for a stay of deportation. So that's a sort of peripheral document. And — We actually refused one? Beg your pardon? We actually refused to grant the issue a stay. They just don't respond to it. The government didn't respond to it. The immigration judge quite often will not respond to a motion. You can also file that with the district director for deportation. And generally, they will — they will — they will restrain the deportation pending any serious litigation. But they're not required to on a motion to reopen. So they just didn't rule on it? I don't believe so, as I — as I remember. And so I — the basic thing is that I think the counsel is mistaken on facts as to what the judge understood. As I — as we point out in a footnote in our brief, regardless, it seems, as much as one may ask for a transcript on a motion to reopen, the board does not provide them, or maybe in an exceptional case. But I've tried before, and you can't get a transcript. So we don't have a record on that. But I believe that implicitly he knew exactly what was happening. Thank you. All right. Thanks. All right. This case is submitted. And we'll go now to the next matter, Tika v. Ashcroft. And that's submitted. And now we move on to —
judges: Goodwin, Pregerson, Tallman